IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMERIPRIDE SERVICES INC., | **8:18CV96** |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| JEFFREY PETERSON, | |
| Defendant. | |

This matter is before the court on the plaintiff's motion for a temporary restraining order, Filing No. 3. The plaintiff seeks to enforce a non-compete agreement. The defendant was served with the petition and summons in this case via messenger and email on March 1, 2018 at 1:17 p.m. Filing No. 19, Return of Service. The plaintiff represented to the court that the defendant was notified via email on March 2, 2018 at approximately 7:30 a.m. of the hearing that occurred at 11:00 a.m. that morning. The defendant did not appear at the hearing. The defendant has not yet entered an appearance in the action and accordingly is not notified via ECF of any filings.

I.     BACKGROUND

Evidence of record establishes that defendant Jeffrey Peterson was employed by AmeriPride as a Sales Executive. As a Sales Executive, Peterson was assigned a territory which spanned four to six sales routes. He was primarily responsible for securing new business, in addition to expanding and maintaining customers for AmeriPride. AmeriPride alleges Peterson was given access to AmeriPride's confidential information, including customer lists, prospect lists, co-worker performance and preferences, marketing strategies, pricing information, and customer requirements.

Peterson's AmeriPride employment agreement (the "Agreement") includes nondisclosure, employee non-solicitation, and customer non-solicitation obligations as follows:

> The Employee agrees that during his/her employment with the Company and for a period of one (1) year after the termination of that employment, (s)he will neither: (a) divulge to any person other than those employed by the Company, any Confidential Information, nor (b) solicit or encourage or, in any way, assist any current employee of the Company to leave employment of the Company for employment (or any other form of association) with any business engaged in the Textile Rental Business, nor (c) shall (s)he directly or indirectly engage or participate in or assist, as owner, part owner, partner, director, officer, trustee, employee, agent or consultant, or in any other capacity, for himself/herself or for any other firm or corporation in the Textile Rental Business with respect to customers or prospective customers which Employee shall have served or called on during the six (6) month period immediately preceding termination.

Filing No. 5-1, Declaration of Jeremy D. Robb, Michael Jackson, Ex. A at 3-4, Non-compete Agreement. In October of 2017, Aramark announced the purchase of AmeriPride. Effective early this year, AmeriPride became a wholly-owned subsidiary of Aramark. There is no evidence as to the terms of the merger. AmeriPride has shown however, that Peterson's compensation did not change with the announcement of the merger and that Aramark confirmed in a communication to sales employees at the time of the merger that there would be no changes to compensation in the fiscal year 2018. Although there is no evidence in the record regarding the number of employee terminations, reductions in sales territory, or changes in sales quotas.

In November 2017, Peterson announced his resignation. Peterson thereafter began working for a direct competitor of AmeriPride, Spin Linen Management ("SLM"). The plaintiff has shown by affidavit that on or around December 8, 2017, Peterson emailed his former customers from his SLM account. Filing No. 7-2, Index of Evid., Ex. 2, affidavit of Rachel Reese at 1-2.

The record shows that in response to a cease and desist letter dated February 1, 2018, Peterson responded; "I have no plans to solicit AmeriPride customers with whom I worked in a sales capacity with between May 25, 2017 and November 25, 2017. In addition, I have no plans to solicit any employees of AmeriPride. The plaintiff concedes that Peterson's alleged contact with customers predated the cease and desist letter. The Plaintiff also asserts that it has lost at least two customers to its competitor SLM, one indicating that it preferred to continue to do business with Mr. Peterson and not AmeriPride.

## II.    DISCUSSION

### A.    Rule 65 Standards

Under the federal rules, the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A) & (B).

A temporary restraining order or preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant. *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 707 (8th Cir. 2011). The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).

### B.    *Dataphase* factors

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*), when determining whether to issue a preliminary injunction or temporary restraining order. When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*); *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

1.      Irreparable harm.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). Thus, "economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (quoting *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013)). A mere possibility of irreparable harm, however, is insufficient to justify a preliminary injunction. The movant must "demonstrate that irreparable [harm] is likely in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis in original). Although no single factor is determinative, the failure to demonstrate the threat of irreparable harm is, by itself,

a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.,* Inc., 871 F.2d 734, 738 (8th Cir. 1989) (*en banc*); *Chlorine Inst.,* 792 F.3d at 915 ("'The absence of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction.'" (quoting *DISH Network,* 725 F.3d at 882)).

The plaintiff argues that it has demonstrated irreparable harm in that it has shown that it lost two customers and it argues that it is impossible to estimate the length of a customer relationship. The court finds the plaintiff has not demonstrated that money damages would be an insufficient remedy for the alleged breach of the non-compete agreement. The record does not support the plaintiff's contention that it faces a threat of irreparable harm absent injunctive relief.

AmeriPride's argument is based on Peterson's alleged acquisition of two customers, which the plaintiff contends would not have happened absent Peterson's breach of the non-compete agreement. However, "a loss of customers" does not necessarily constitute irreparable harm. *Novus Franchising, Inc. v. Dawson,* 725 F.3d 885, 895 (8th Cir. 2013) (affirming district court's denial of a preliminary injunction because there was a "question whether [the plaintiff's] injuries, i.e., 'a loss of customers or customer goodwill,' [were] truly 'irreparable' in the sense that they could not be addressed through money damages") (internal citations omitted). Although the plaintiff argues that Peterson has deprived it of two customers and may deprive it of more, it is plaintiff's burden to show that any resulting harm is irreparable. It has not met that burden. *Roudachevski v. All-American Care Ctrs., Inc.,* 648 F.3d 701, 707 (8th Cir. 2011). If the non-compete is found to be enforceable, the plaintiff has an adequate remedy at law in that it can recover damages. Contrary to the plaintiff's assertion, those damages would not be impossible to prove. Plaintiff has not

demonstrated how it would be irreparably harmed absent issuance of the requested injunctive relief. The loss of two customers has already occurred. If the plaintiff can prove that the loss was due to Peterson's breach of the non-compete agreement, it will be entitled to damages. Also, although Peterson contends the non-compete agreement is unenforceable, he has stated he has no intention to "contact customers etc". AmeriPride has not shown that any harm it may suffer cannot be compensated by money damages. Accordingly, the court finds that the irreparable harm factor does not favor issuance of a temporary restraining order.

### 2. Balance of the Harms

The primary question when issuing a preliminary injunction is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

The court finds the issuance of such an injunction could cause significant economic harm to the defendant in terms of attorney fees and damage to his employment. The defendant asserts in his response to the cease-and-desist letter, that the covenant not to compete is unenforceable. The court need not determine the merits at this time. In the absence of a showing that the harm to the plaintiff outweighs any harm to the defendant and third parties, the balance of harms does not favor issuance of the extraordinary relief of an injunction. The record shows the harm to the plaintiff is not likely to be greater than the loss of two customers that has already occurred. Injunctive relief cannot change that fact.

6

The plaintiff has not shown that any further acquisition of customers, misappropriation of trade secrets, or disclosure of confidential information is likely to occur. Thus, the court finds that the balance of the harms does not favor issuance of an injunction.

        3.      Likelihood of Success on the Merits.

"In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). With respect to this factor, it is not necessary for the movant to prove he or she is more likely than not to prevail, the movant "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Dataphase*, 640 F.2d at 113.

In Nebraska, courts have long recognized that at common law, all contracts in restraint of trade are against public policy and void. *See Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 127–28 (Neb. 2014). Nebraska statutes are to the same effect. *Id.*; *see, e.g.*, Neb. Rev. Stat. § 59–1603 (stating that "[a]ny contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful"). "'However, while not favorites of the law, partial restraints are not deemed to be unenforceable when they are ancillary to a contract of employment and are apparently necessary to afford fair protection to the employer.'" *Id.* (quoting *Sec. Acceptance Corp. v. Brown*, 106 N.W.2d 456, 462 (Neb. 1960), *modified on denial of reh'g,* 107 N.W.2d 540 (Neb. 1961).

Covenants not to compete, as partial restraints of trade, are enforceable only if the covenants are reasonable. *Id.* The Nebraska Supreme Court has "repeatedly stated that there are three considerations used to test the validity of a covenant not to compete." *Id.*

To determine whether a covenant not to compete is valid, a court considers whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *Id.* at 127-28 (noting that it is often best to consider the second feature identified above and initially determine if the restraint is in aid of some legitimate interest of the employer). Generally, covenants not to compete are valid and enforceable where they are reasonably limited to restricting the former employee from contacting customers with whom the former employee had had personal contact while employed by the former employer and where they contain reasonable temporal and geographical restrictions. *Id.* at 128.

The court is hesitant at this time, in the context of an *ex parte* hearing, to find that the plaintiff has shown probable success on the merits.[1] Evidence is lacking as to whether the covenants were assigned, assignable, or enforceable by operation of law in connection with the merger.[2] Although the plaintiff has shown that Peterson's compensation did not change as a result of the merger so as to amount to an abrogation or reformation of the contract, there is no evidence as to other less-tangible changes that may have been made to the defendant's terms of employment. Also, it is not clear in the record that the alleged email

---

[1] Though the defendant received notice of the action and the hearing, he did not receive timely notice. The court is troubled by the failure of the plaintiff to notify the defendant of the TRO hearing until the morning of the hearing, when it had notice of the proceeding the day before. As discussed above, in light of the defendant's statement that he has no intention of contacting customers, the court finds the plaintiff has not set out specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.

[2] The plaintiff relies on *Aon Consulting v. Midlands Fin.*, 748 N.W.2d 626, 637 (Neb. 2008) for the proposition that a successor corporation can enforce a former employee's nonsolicitation covenant. However, that case was based on Maryland's merger statute, which controlled under the merger agreement. *Id.* at 636. The Nebraska Supreme Court agreed with other courts interpreting statutes similar to Maryland in concluding simply that a nonsolicitation covenant is a corporate asset, and as such "passes by operation of law to a successor corporation as the result of a merger, regardless of whether the agreement would otherwise be assignable." *Id.* at 637. The plaintiff has not identified a Nebraska statute that would produce the same result.

contacts by Peterson were directed to customers he had contacted within six months of the end of his employment. The plaintiff's evidence on that issue is qualified by statements "based on information and belief." There are also issues as to whether Peterson had substantial personal contact with his customers and whether the information Peterson acquired as part of his employment was "secret" or confidential in that it was not generally available to the public. At this time, the plaintiff has not demonstrated that the covenant is enforceable and it is likely to succeed on the merits. It has not shown that the non-compete agreement is not greater than is reasonably necessary to protect the employer in some legitimate interest, so as to be enforceable as a matter of law.

### 4. The Public Interest

The court must also consider whether the public interest would be served by granting the movant's motion for injunctive relief. *Dataphase*, 640 F.2d at 113. This case involves a contract dispute between private parties, which is of little interest to, and has little effect on, the general public. Although the public has an interest in protecting contractual rights, the plaintiff has not shown how an injunction would benefit the public. Conversely, the public has a similar interest in being protected from unconscionable or unenforceable contract provisions.

The plaintiff has not demonstrated how the public at large has any interest in preliminary enforcement of the non-compete agreement and the prevention of any loss of customers that has not already occurred. As noted above, the public's general interest in the enforcement of enforceable contracts can be protected through an award of monetary damages. Under the circumstances, the court finds granting a temporary restraining order would neither serve nor frustrate public interests. Accordingly,

IT IS ORDERED:

1.     The plaintiff's Motion for a Temporary Restraining Order (Filing No. 3) is denied.

Dated this 5th day of March, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge